23CA1201 Peo v Curtis 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1201
El Paso County District Court No. 22CR3187
Honorable Eric Bentley, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Calder Curtis,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

McClintock Law Firm, LLC, Elizabeth A. McClintock, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Calder Curtis, of harassment and two counts of child abuse.  He appeals these convictions.  We affirm.

## I.     Background

¶ 2     During an altercation with his wife, A.C., Curtis put his hands around her neck and choked her.  The prosecution charged Curtis with second degree assault; second degree kidnapping; third degree assault; harassment; and, because the altercation occurred in front of their two children, two counts of child abuse.

¶ 3     At trial, Curtis defended on the theory that he put his hands on A.C. to stop her from grabbing a gun and shooting herself or others.  The jury convicted Curtis of harassment and both counts of child abuse, but it acquitted him of the remaining charges.  The district court sentenced Curtis to eighteen months of supervised probation.

## II.     Unrestricted Access to Recorded Evidence

¶ 4     Curtis first contends that the district court abused its discretion by allowing the jury unfettered access to a recorded phone call between A.C. and Curtis.  We disagree.

## A.   The Recorded Call

¶ 5     The day after the altercation, A.C. called Curtis, and they had

had the following exchange:

>  A.C.: Hey.
>
>  Curtis: What's up?  What's up?
>
>  A.C.: How's it going?
>
>  Curtis: Working.
>
>  A.C.: What happened yesterday?
>
>  Curtis: That's a good fucking question, [A.C.]  What happened yesterday?
>
>  A.C.: You choked me out again, and you promised you wouldn't.
>
>  Curtis: You were going for a gun to, according to you, kill yourself and kill me.  Yes, I choked you, I'd do it again.
>
>  A.C.: You would?
>
>  Curtis: Yeah, if you're going for a gun, yeah.
>
>  A.C.: Even though I wasn't going for a gun?
>
>  Curtis: Alright, you wanna apologize, or you gonna shut the fuck up?  Cause that's your goddamn options.  You done?  I'm done.  Are you done?  I'm done.
>
>  A.C.: What about the other times that you choked me?
>
>  Curtis: [disconnects call].

¶ 6     The call was audio and video recorded and lasted just over one

minute.  At trial, the district court admitted the entire unredacted

call.[1]

¶ 7     During deliberations, the district court rejected defense

counsel's argument that the jury's access to the recorded call

should be limited because the call contained A.C.'s "testimonial"

statements.  The court concluded that A.C.'s statements were

necessary "to set up the statements by [Curtis]," and, therefore, it

allowed the jury unrestricted access to the recorded call.

> B.     The District Court Did Not Abuse Its Discretion by Allowing
> the Jury Unfettered Access to the Recorded Call

¶ 8     Control over the use of exhibits during jury deliberations is an

issue "firmly within the discretion of the trial court."  *DeBella v.*

*People*, 233 P.3d 664, 666 (Colo. 2010).  Thus, we won't reverse a

district court's refusal to "limit the use of an exhibit" absent an

abuse of discretion.  *Id.* at 667.

---

[1] The district court first admitted a redacted version of the recorded call, but after defense counsel opened the door to the portions of the recorded call that had been redacted, the court admitted the entire recording.

¶ 9    While a district court generally shouldn't give a jury unfettered access to exhibits containing testimonial evidence, *see id.* at 668-69, a jury is typically permitted unfettered access to exhibits that contain the defendant's statements or other nontestimonial evidence, *Rael v. People*, 2017 CO 67, ¶¶ 2, 32.

¶ 10    Because the recorded call contained Curtis's own statements, and because Curtis doesn't argue that the district court erred by concluding that A.C.'s statements were relevant to contextualize his statements, "we discern no abuse of discretion in the [district] court's decision to grant the jury unfettered access to the [recorded call] during its deliberations." *Id.* at ¶ 24; *see also People v. Shannon*, 2024 COA 41, ¶ 22 (holding that the district court did not abuse its discretion by allowing the jury unrestricted access to recorded calls between the victim and the defendant).

¶ 11    To the extent Curtis now argues that the district court should've restricted access to the recorded call because the call references Curtis's "prior, uncharged bad acts," Curtis didn't raise this specific objection before the court. We therefore review this new argument for plain error. *See People v. Tallent*, 2021 CO 68, ¶ 12. And because Curtis didn't object to the *admission* of the

recorded call (in fact, he opened the door to the admission of the entire unredacted call), we don't see how the court erred — much less plainly so — by allowing the jury unfettered access to an admitted trial exhibit.

### III. Instructions During Jury Deliberations

¶ 12 We next reject Curtis's contention that the district court reversibly erred by how it responded to a jury question about verdict unanimity.

### A. The Jury's Questions

¶ 13 After deliberating for about five hours, the jury submitted the following question: "What is our recourse if we can't decide on a charge if we're not unanimous?" With the agreement of counsel, the district court instructed the jury in writing to "[p]lease continue your deliberations. A jury may take as long as it needs to reach a unanimous decision."

¶ 14 Shortly after, the jury sent a follow-up question: "If we can't come to a unanimous decision, what happens?" The district court then proposed that it respond to the inquiry by following the process outlined in *People v. Black*, 2020 COA 136. Specifically, the court proposed asking the foreperson about the likelihood of

reaching a unanimous verdict and whether it was "likely, unlikely, or impossible." And the court proposed advising the foreperson that if she was unsure of the likelihood, she could return to the deliberation room to confer with the other jurors.

¶ 15　The prosecution and defense counsel expressly agreed to the proposed procedure.

¶ 16　With counsel present, the foreperson was then brought into the courtroom and, in response to the district court's question about the likelihood of reaching a unanimous verdict, answered, "The thing is we're trying to get it done today so we don't have to come back tomorrow, probably unlikely." The court responded,

> And I guess I already tried to give you the understanding from my first written answer that it's really important that I convey to you that there are no deadlines. You should take the time that you need. But are you confident that the answer is generally unlikely? Or would you like — with the clarification I just provided, would you like to confer with the other jurors?

The foreperson asked to confer with the other jurors but returned one minute later and asked, "Do you mean in the time we need, or the time that we want to get the decision?" The court responded, "[I]t will always be my job to tell you [that] you should take the time

you need to reach a unanimous verdict. I'm not trying to — I'm trying to not interfere in that process as much as possible. Does that give you enough?" The foreperson indicated that she understood and left the courtroom.

¶ 17     Though the district court and counsel discussed potential next steps if the foreperson confirmed that a unanimous verdict was unlikely, the jury reached a verdict less than an hour later, convicting Curtis of three counts and acquitting him of three.

### B.     The District Court Did Not Reversibly Err by Responding to the Jury Foreperson

¶ 18     To the extent Curtis now contends that the district court erred by "instructing the jury foreperson, rather than the jury," and by following the process outlined in *Black*, we agree with the People that Curtis waived this contention. That's because the court outlined the exact procedure it proposed to respond to the jury's question, including questioning the foreperson directly about the likelihood of reaching a unanimous verdict. When asked if he had any objections to the proposed procedure, defense counsel said, "I don't object to that process." And after the foreperson said she would like to confer with the panel, the court again asked counsel

for any comment, and defense counsel said nothing. Because defense counsel knew what procedure the court planned to follow and expressly consented to the court questioning the foreperson, Curtis waived any objection to that procedure. *See People v. Rediger*, 2018 CO 32, ¶ 39 (Waiver is "the intentional relinquishment of a known right or privilege.") (emphases and citation omitted); *see also People v. Manzanares*, 2020 COA 140M, ¶ 16 (concluding that the defendant had waived a claim when defense counsel "agreed to the trial court's curative procedure and requested nothing further").

¶ 19 Insofar as Curtis contends that the district court's second exchange with the foreperson — which went beyond the procedure that the court and counsel discussed — was improper, we will review that contention for plain error.

¶ 20 "An error is plain only if it is obvious and substantial." *People v. Claycomb*, 2025 COA 36, ¶ 35. An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *Id.*

¶ 21 As we understand it, Curtis contends the district court obviously erred by responding to the foreperson's request for

clarification without providing a written instruction to the entire panel. He says that by doing so, "[t]here is no assurance" that the foreperson relayed the information to the panel or that the information was "not used to coerce the jurors to reach a verdict."

¶ 22    But Curtis directs us to no authority — and we're not aware of any — addressing the circumstances presented here. After all, defense counsel consented to the court questioning the foreperson, and nothing in the court's response to the foreperson's request for clarification imposed a deadline on the jury or otherwise urged the jurors to compromise their views for the sake of unanimity. *See People v. Cox*, 2023 COA 1, ¶ 22. And though the jury reached a verdict less than an hour later, it acquitted Curtis of three charges (including the two most serious felony counts). This cuts against a conclusion that the jury was coerced by the court's response. *See id.* at ¶ 35.

¶ 23    Taking all this together with the district court's broad discretion to determine appropriate responses to jury inquiries concerning a unanimous verdict, *see id.* ¶¶ 16-17, 30, we cannot conclude that the court's brief response to the foreperson's request for clarification was obvious error.

## IV. Disposition

¶ 24  We affirm the judgment.

JUDGE BROWN and JUDGE SCHOCK concur.